UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| GLENDA ROTHBERG, as Executor of Estate of Glenn Morris, Sr. and Attorney-in-Fact for Faynell Morris,<br><br>*Plaintiff*,<br><br>v.<br><br>CINCINNATI INSURANCE COMPANY,<br><br>*Defendant*. | Case No. 1:06-CV-111<br><br>Chief Judge Curtis L. Collier |

## MEMORANDUM

Before the Court is defendant Cincinnati Insurance Company's ("Defendant") motion for summary judgment (Court File No. 60) and motion to strike (Court File No. 108) and plaintiff Glenda Rothberg's ("Plaintiff") motion for partial summary judgment (Court File No. 92) and motion for judicial notice (Court File No. 114). The Court has considered the associated briefs and other submissions of Plaintiff (Court File Nos. 93, 100, 101, 102, 115, 116) and Defendant (Court File Nos. 61, 62, 98, 109, 112, 113). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 60), **DENY** Defendant's motion to strike (Court File No. 108), **DENY** Plaintiff's motion for partial summary judgment (Court File No. 92), and **GRANT** Plaintiff's motion for judicial notice (Court File No. 114).[1]

---

[1] In addition, the Court will **DENY** Defendant's motion for oral arguments on the summary judgment motion (Court File No. 106) and will **GRANT** Plaintiff's motion to exceed the page limit (Court File No. 99).

**I.     RELEVANT FACTS**

This case concerns a house on Elder Mountain, which was owned by Glenn Morris, Sr.[2] and was insured under a homeowner's policy issued by Defendant for April 22, 2005 through April 22, 2006. Behind the house was a deck containing a swimming pool and patio, which were supported by a retaining wall over a slope. On June 6, 2005, the pool/patio area and concrete retaining wall were damaged in a collapse that Plaintiff alleges resulted from hydrostatic pressure or, in the alternative, a landslide. The insurance policy has a large deductible for damage caused by a landslide and no deductible for damage caused by hydrostatic pressure. Plaintiff contends she is entitled to recover under the insurance policy. Plaintiff also contends Defendant made various misrepresentations to the insured. Defendant contends the collapse resulted from a landslide and that regardless it has no duty to pay for the damage under the homeowner's policy.

Glenn Morris, Jr.[3] had power-of-attorney to act on his father's behalf (Court File No. 62-52, p. 1). He was in Russia when the wall collapsed, and returned shortly afterwards (Court File No. 100-4, p. 2). When the collapse occurred, Jennifer Lively, an employee of Morris, reported the damage to Defendant (Court File No. 100-5, p. 3). Lisa Reason, an insurance adjuster for Defendant, investigated the claim for damages at the property (Court File No. 62-3). She hired Tri-State Drilling and Testing ("Tri-State") to investigate the loss. Based on what Reason says were oral representations from Q.T. Morphis of Tri-State, Reason believed the loss was caused by a landslide, and she told that to Morris (Court File Nos. 62-3, 100-4). However, Plaintiff contends Tri-State actually told Reason that hydrostatic pressure caused the collapse. In a letter from Tri-State to

---

[2]Morris, Sr. has since died. Plaintiff is the executor of his estate.

[3]All references to "Morris" are to Glenn Morris, Jr., unless otherwise noted.

Reason, which was signed by Morphis and a second person, Tri-State concludes that water built up "until pore water pressure became excessive and the slope beneath the deck failed" (Court File No. 100-5, p. 15). Defendant's other expert, Rami Mishu, agrees that "pore water pressure" generally means hydrostatic pressure (Court File No. 100-6, p. 10). Morris was unaware of Tri-State's written report (Court File No. 100-4, p. 2).

At Defendant's request, Mishu also visited the property. He reached a "preliminary opinion" that the loss was caused by a landslide, and noted that he "disagree[s] with Tri-StateTesting's theory of wall failure" (Court File No. 100-6, pp. 20-22).

On October 26, 2005, Defendant sent a letter to Morris (Court File No. 100-4). Plaintiff contends this letter contained multiple misrepresentations. The letter stated that Reason retained an expert who determined there was a landslide (Court File No. 100-4, p. 7). The letter then stated that Morris had disagreed with that determination, so Defendant hired Mishu to examine the property (Court File No. 100-4, p. 8). The letter from Defendant to Morris states that Mishu had determined the cause was a landslide. Plaintiff contends the letter overstated Mishu's "preliminary opinion" and failed to note that Mishu has previously done work for Defendant's counsel (Court File No. 100-6, p. 6). The letter also states that a company hired by Morris concurred that the damage was caused by a landslide, and therefore "this issue has been resolved." (Court File No. 100-4, p. 8). The letter then discusses the insurance coverage (Court File No. 100-4, p. 9). The letter states the deductible would be $130,100, and Defendant would need to receive documentation, proof of loss, and estimates of repair prior to payment.

Defendant's letter also discussed the "importance of making repairs." Describing Mishu as a "certified Geological and Civil Engineer," the letter states Mishu believes there are "risks of

substantial further damage, including catastrophic damage to the home if immediate repairs are not made," and the importance of completing these repairs before winter (Court File No. 100-4, p. 10). As a result of the letter, Morris hired an engineering company to recommend a plan to stabilize the slope and/or repair it (Court File No. 100-4, p. 4). That company, S&ME, recommended a soil nail wall, which it then constructed (Court File No. 100-4, p. 4).

Plaintiff contends there are four misrepresentations in Defendant's letter. First, the letter states an outside expert for Defendant had determined the cause of loss was a landslide, which Plaintiff contends was false. Second, the letter relied on another outside expert, Mishu, but failed to disclose Mishu was retained by Defendant's outside counsel and had previously provided litigation support to that attorney. Third, the letter states Mishu "confirmed that it was a landslide," which Plaintiff contends is false because Mishu gave only a "preliminary" opinion and did not confirm anything but instead disagreed with the earlier opinion from Tri-State. Fourth, the letter suggests the loss would be paid subject to a landslide deductible, but Plaintiff contends Defendant was actively seeking to avoid coverage.

As evidence Defendant was seeking to avoid coverage, Plaintiff notes that Defendant's counsel contacted Allstate Insurance, which previously had a policy on the home (Court File No. 100-7). Counsel told Allstate he was investigating the insured for fraud (Court File No. 100-7). Plaintiff contends it was misleading for Defendant to inform Morris the claim would be paid subject to a deductible while simultaneously initiating a fraud investigation and not informing Morris there would be no payment.

There had been a previous mudslide, in 2004, in which the previous insurer, Allstate, denied payment of the claim (Court File No. 62-2, pp. 3-4). Near the time when the insurance policy was

4

bought, Diana Ringer, the insurance agent who obtained the insurance policy from Defendant, did a search that retrieves claims from various insurance carriers (Court File No. 100-9, p. 17). As a result of that search, Ringer learned of the mudslide claim, which she asked Morris about. He told her it was a claim for a mudslide and Allstate had not paid it (Court File No. 100-9, pp. 6-7). Ringer included the fact of a mudslide on the ACORD she sent to Defendant (Court File No. 100-9, pp. 8-9, 34), and Defendant knew about the 2004 mudslide prior to issuing the insurance policy (Court File No. 100-9, pp. 19-22). Furthermore, Plaintiff's insurance application identifies a 2004 mudslide, and indicates that no claim was paid (Court File No. 100-9, p. 34). However, Plaintiff's insurance application is checked "no" where it asks about prior landslides (Court File No. 62-14, ¶ 10). Defendant contends it was misled, but Plaintiff disputes Defendant's contentions either the ACORD or insurance application contain false or misleading statements.

Plaintiff obtained experts, C. Lee Mason and Timothy Siegel,[4] who each determined the retaining wall collapsed as the result of hydrostatic pressure that was intensified during a period of heavy rainfall, and not by a landslide (Court File Nos. 100-2, 100-14).

Siegel also states that the retaining wall was attached to the dwelling because it served as part of the home's foundation system (Court File No. 100-3). The retaining wall and deck were a necessary part of the structural system and were connected by concrete to the main portion of the dwelling (Court File No. 100-3). Siegel also opined that installing the soil nail wall was necessary to stabilize the ground beneath the house (Court File No. 100-3). Aside from the soil nail wall, Plaintiff has not had any other work done behind the house to stabilize the property (Court File No. 62-10, p. 5).

---

[4]Siegel apparently worked for S&ME.

On May 20, 2005, between the dates when the insurance policy started and the retaining wall collapsed, Defendant had Keith Mandella appraise the property. He determined the property's value to be over $5 million, almost twice the previous appraised value. After the claim, Defendant indicated it would not renew the insurance policy and gave the higher appraisal value for the house (Court File No. 100-9, pp. 22-23), which Plaintiff contends was intended to increase premiums. Mandella's inspection noted the risk of earth movement and that the home was built on a hillside, as well as signs of erosion and cracks in the foundation (Court File No. 62-15, p. 4). Mandella pointed out the erosion issue to Morris, who stated he was already aware of the problem (Court File No. 113-2, p. 3). The inspection report stated, "A large area of rear yard on the hillside of risk appears to have significant erosion problems . . . . The area is close to slipping if not attended to." (Court File No. 62-15, p. 8). Plaintiff contends Defendant could have canceled the insurance policy within 60 days of its issuance (Court File No. 62-9, p. 26).

Based on a letter from Qore Property Sciences, Defendant became aware of potential problems with the retaining wall (Court File No. 62-5). There is indication of a partial failure of the retaining wall in 2003 (Court File No. 62-5, pp. 1, 11). There had also been problems with the pool leaking (Court File No. 62-2, pp. 5-6). In the spring of 2005, Morris noticed three to 4 four cracks or fissures near the wall (Court File Nos. 62-2, pp. 7-8; 62-10, p. 4). After the initial landslide, Morris contacted a few engineers and a construction company to look at the wall, but did not see any urgency (Court File No. 62-2, p. 9, 62-10, p. 3). Never did Morris or anyone connected to him tell Reason of any pre-existed or prior damage to the retaining wall, prior landslides, nor of prior claims related to mudslides or problems with the retaining wall, including open fissures (Court File No. 62-3). The Qore report was requested by Plaintiff's pool repairman, Greg Minton, who read the report

6

and was not concerned about the wall collapsing (Court File No. 102-11).

On December 14, 2005, Morris filed a proof of loss, which stated the cause of loss is "still under investigation" and the amount of damage yet to be determined (Court File No. 62-7).[5] The following month, on January 23, 2006, Plaintiff filed a proof of loss, which stated that "based upon the opinion of the exp[erts] hired by Cincinnati Insurance Company as summarized in the attached correspondence we acquiesce in the conclusion that the loss was caused by landslide." (Court File No. 62-8). It was not until January 2006 Defendant received a damage estimate (Court File No. 62-14, ¶ 22). Defendant decided to deny payment in spring of 2006 because it believed the covered loss under the landslide policy would be less than the deductible (Court File No. 62-14, ¶ 21).

Plaintiff alleges breach of contract, violation of the Tennessee Consumer Protection Act, intentional/negligent misrepresentation, and bad faith failure to pay promptly (Court File No. 105). Defendant filed a counterclaim alleging it is entitled to recover attorney's fees. Defendant seeks summary judgment on all claims. Plaintiff seeks partial summary judgment, only on her claim under the Tennessee Consumer Protection Act.

## II. MOTION TO STRIKE AND MOTION FOR JUDICIAL NOTICE

Defendant filed a motion to strike parts of four affidavits submitted by Plaintiff. The Court will **DENY** the motion because the evidence at issue does not affect the outcome of the summary judgment motions.

### A. Glenda Rothberg

---

[5]Defendant contends this proof of loss was invalid because Morris did not represent his father's estate since his father had passed away, and Plaintiff took over negotiations as executor of the estate.

Defendant moves to strike parts of Rothberg's affidavit dealing with the course of negotiations between her counsel and Defendant's counsel. The testimony is not necessary to any issue in the summary judgment motions.

**B.    Greg Minton**

Defendant moves to strike Minton's account of a conversation with Morris. Minton's description of Morris's statement is not necessary to any essential issue in the summary judgment motions. Minton's description of his own view upon reading the Qore report does not require specialized knowledge. It is a testimony of fact as to what he believed upon reading the report. In that context, he is not serving as an expert witness, so there is no need to strike his statement.

**C.    Timothy Siegel**

Defendant argues that Siegel's declaration, in which he opines the collapse resulted from hydrostatic pressure, contradicts his deposition testimony, in which he stated he had no opinion on causation. Because Siegel's opinion overlaps with Mason's on this issue, excluding Siegel's opinion would not change the result of the summary judgment motions.

**D.    C. Lee Mason**

During Mason's deposition, he stated the loss occurred after a heavy rainfall, but was unable to say exactly when the rain fell on the day of the loss. He later signed a declaration stating he checked his records and determined the rainfall occurred prior to the collapse. Defendant argues the declaration contradicts his previous deposition testimony that he did not have the data to state when the rain fell. Plaintiff has since moved for the Court to take judicial notice of the relevant rainfall data, which renders this issue moot. Defendant has not opposed the motion. It will be **GRANTED** (Court File No. 114). Furthermore, it is not important on summary judgment what exact hours rain

8

fell. Rain fell during the time period, and that contributed to at least one expert witness's conclusion that the cause was hydrostatic pressure.

## III.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323.  In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## IV.     DISCUSSION

Defendant argues it is entitled to summary judgment on each of Plaintiff's four claims. In addition, Defendant contends Plaintiff is barred from recovering under the contract by its terms and under the loss-in-progress doctrine. For the purposes of this motion, the Court construes the evidence in the light most favorable to Plaintiff and will therefore assume that hydrostatic pressure, and not a landslide, caused the retaining wall to collapse.

### A. Breach of Contract

Defendant contends Plaintiff's breach of contract claim fails because she has not complied with the insurance policy's condition precedents. "A condition precedent in the law of contracts may be a condition which must be performed before the agreement of the parties shall become a binding contract or it may be a condition which must be fulfilled before the duty to perform an existing contract arises." *Strickland v. Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980). Plaintiff contends the conditions precedent were satisfied.

Defendant contends Morris was aware of 1) damage to the pool, patio, and retaining wall well before the wall collapsed in June 2005; 2) fissures near the retaining wall in April 2005 (and around that time, he hired engineers to survey the damage); 3) erosion pointed out by Mandella in May 2005; and 4) the retaining wall buckling in the spring of 2005. Defendant argues Morris failed to undertake any measures to provide stability or prevent further damage, which violated a condition precedent of the contract. Defendant contends each problem constitutes an "occurrence" under the terms of the policy, which triggers a duty to engage in repairs. Defendant further argues that Plaintiff has not complied with the policy because no work has been done to stabilize the property, except for the soil nail wall. Plaintiff argues that the pre-existing damage was unrelated to the hydrostatic pressure that caused the collapse. She contends there was no duty to report on things that

happened before the policy's issuance because Defendant inspected the areas in question and had a right to cancel the policy but chose not to. Plaintiff also argues the policy did not require reporting of minor problems of the type that occurred.

The insurance policy specifies that, "In case of a loss to covered property, [the insured] must see that the following are done" (Court File No. 62-9, p. 15). One of the listed requirements is to "Protect the property from further damage," including making "reasonable and necessary repairs to protect the property" (*id.*). Defendant argues those duties occur with each "occurrence" but "occurrence" is specifically defined in the policy (Court File No. 62-9, p. 6) and does not appear in the section regarding the insured's duties after a loss. Rather, that section deals with what occurs after a "loss to covered property."

In this case, the loss to covered property occurred when the retaining wall collapsed in June 2005. Subsequent to the collapse, a soil nail wall was erected, but Defendant argues no work has been done to stabilize the earth or prevent further damage. Plaintiff's experts contend the soil nail wall was necessary to stabilize the house.

Prior to the collapse, there may have been some indications of problems in or near the retaining wall. Minton, who repaired the pool in 2003, had requested the report from Qore, which mentioned cracks in the retaining wall and that it was buckling. Having read the report, Minton was not concerned about the wall collapsing and did not believe there was any indication the wall would collapse (Court File No. 102-11). Mason also does not believe the Qore report suggested a collapse was imminent (Court File No. 102, p. 12). Although Morris enlisted multiple engineers to investigate the issues, there is at the very least a dispute of evidence as to whether it was likely for the retaining wall to collapse. Furthermore, the insurance contract does not appear to have obligated

11

Plaintiff to report problems to Defendant before the policy came into effect. Accordingly, the summary judgment motion on this claim will be **DENIED**.

### B.     Bad Faith to Pay Promptly

Plaintiff contends Defendant violated Tenn. Code Ann. § 56-7-105(a) by making a bad faith refusal to pay the claim. Under § 56-7-105(a), insurance companies are liable "in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy" if "the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy." Defendant argues Plaintiff failed to comply with the statute's requirements and lacks evidence of bad faith.

To recover under § 56-7-105(a), Plaintiff must prove: "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). The statute is "penal in nature and must be strictly construed." *Id.*

Defendant argues Plaintiff failed to comply with the statute's requirement that she wait 60 days after making a demand before filing suit. Regardless of whether the proof of loss was filed on December 14, 2005 or January 23, 2006, Plaintiff did not wait 60 days after making the demand before filing suit on February 6, 2006. Plaintiff contends that she was "forced" to file suit because the statute of limitations was about to expire. However, Plaintiff does not advance any argument that the bad faith statute contains an exception for situations when the statute of limitations is about

to expire. Furthermore, the insurance policy required the insured to file suit "within one year after the date of loss." (Court File No. 62-9, p. 17). It appears the earliest deadline for filing suit would be June 5, 2006. Plaintiff filed suit on February 6, 2006, and offers no explanation for how a deadline almost four months in the future "forced" her to file suit. Accordingly, Plaintiff did not comply with the requirements of the bad faith statute, so Defendant's summary judgment motion on this claim will be **GRANTED**.

### C. Tennessee Consumer Protection Act

Plaintiff alleges Defendant's handling of the insurance claim violated the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104, which prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Defendant contends it did not mislead or deceive Plaintiff. Both parties seek summary judgment on this claim.

The TCPA applies to deceptive acts by insurance companies. *Gaston v. Tennessee Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 822 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 925 (Tenn. 1998). That includes deceptive acts during the claim process. *Sparks v. Allstate Ins. Co.*, 98 F. Supp. 2d 933, 937-38 (W.D. Tenn. 2000). "The main purpose of the [TCPA] is to protect consumers, and it must be liberally construed to affect that purpose." *Gaston*, 120 S.W.3d at 822.

Plaintiff contends Defendant violated the TCPA in three ways: 1) by falsely informing Plaintiff that Tri-State had determined the loss was caused by a landslide; 2) by falsely describing Mishu's preliminary opinion as a confirmation of Tri-State's opinion; and 3) by falsely claiming immediate repairs were necessary. Plaintiff moves the Court to hold that Defendant violated the

TCPA.[6]

In response, Defendant argues 1) Reason was verbally told by Tri-State the cause was a landslide; 2) Mishu's opinion, although initially a preliminary opinion, became his final opinion; and 3) immediate repairs were necessary under the terms of the insurance policy, but Mishu and Defendant disagreed with Plaintiff that a soil nail wall was the proper repair. Given that Plaintiff bears the burden of proof on this issue, establishing liability on a summary judgment motion is very difficult, and summary judgment is not appropriate here due to the factual disputes raised by Defendant.

The allegations do not lead to summary judgment for Defendant either. Defendant sent Plaintiff a letter stating Tri-State had determined the cause of loss was a landslide, when it had actually determined the cause of loss was hydrostatic pressure. When an insurance company denies a claim based on information it knows to be false, that supports a claim under the TCPA. *See Sparks*, 98 F. Supp. 2d at 938; *see also Cowie v. State Farm Fire & Cas. Co.*, No. 1:07-cv-63, 2007 U.S. Dist. LEXIS 56089, *19 (E.D. Tenn. Aug. 1, 2007). This comports with a case relied on by Defendant, *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, in which the United States Court of Appeals for the Sixth Circuit found an insurer was not liable under the TCPA because the insured was not misled or deceived by the insurer's acts. 129 F. App'x 955, 960-61 (6th Cir. 2005). In this case, because Defendant allegedly misrepresented Tri-State's opinion, a jury could infer Defendant was trying to mislead Plaintiff into concluding a landslide caused the loss. Plaintiff has also identified other misrepresentations which could lead a jury to conclude Defendant violated the

---

[6]Plaintiff contends there are other violations of the CPA, but focuses on these three for the purposes of her motion for partial summary judgment.

TCPA.

It is not important that Morris's employee initially reported to Defendant that a mudslide had occurred. That employee's initial impression was not of substantial substance to bind Plaintiff. The employee was not an expert who could diagnose the exact cause of the collapse. That is why Defendant sent its adjuster to the home and why it employed Tri-State and Mishu to determine the cause. When Tri-State determined the cause was hydrostatic pressure, Defendant allegedly misrepresented that opinion to Morris.

### D. Negligent and Intentional Misrepresentation

Plaintiff contends Defendant made misrepresentations. Defendant argues there were no misrepresentations. As discussed in the previous section concerning the TCPA, a jury could find misrepresentations. Accordingly, summary judgment on this claim will be **DENIED**.

### E. Damages Under the Policy

Defendant contends it is entitled to summary judgment as to damages because Plaintiff is not entitled to payment under the insurance policy.

Contract interpretation is a question of law for the Court. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Id*. "In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent." *Id.*

#### 1. Costs of installing the soil nail wall

Defendant argues Plaintiff is not entitled to damages for the cost of the soil nail wall under the terms of the policy because the policy excludes costs "incurred to stabilize land or prevent further earth movement" (Court File No. 62-9, p. 9). Plaintiff contends the soil nail wall was

15

covered under the policy because it replaced part of the house's foundation and was necessary to safely removal debris. Plaintiff also contends that Defendant's October 26 letter implied the repairs were necessary and would be covered by the insurance policy, and therefore damages result under the TCPA if Defendant deceived Plaintiff on those facts. However, Defendant argues that Plaintiff's contractor determined the soil nail wall was necessary and that Defendant never suggested it would pay for the soil nail wall.

Reasonable expenses for removing debris are covered by the insurance policy (Court File No. 62-9, p. 9). Plaintiff submitted evidence that installing the soil nail wall was necessary for removing debris. In addition, Plaintiff submitted evidence the soil nail wall is necessary to stabilize the house, not merely land. Accordingly, summary judgment is not appropriate on this issue.

### 2. Costs of repairing the retaining wall, swimming pool, and patio

Defendant argues costs to repair the retaining wall, swimming pool, and patio are not covered under the insurance policy regardless of whether the loss was caused by landslide or hydrostatic pressure.

The parties agree the proper starting point for analyzing coverage under the insurance policy for hydrostatic pressure is in the collapse section. The policy states: "We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . g. Water or water-borne material below the surface of the ground, including water or water-borne materials, which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure."[7] (Court File No. 62-9,

---

[7]This clause appears in the attachment to the insurance policy under the title "Hydrostatic Pressure Coverage" (Court File No. 62-9, p. 36).

pp. 10, 11, 36). The policy states: "Collapse means an abrupt falling down or caving in of a building or any part of a building with the result the building or part of the building cannot be occupied for its intended purpose (*id.*).

Defendant contends the hydrostatic pressure coverage does not apply in this case because the retaining wall is not a building or part of a building. Plaintiff contends the retaining wall is a building or "other structure." Whether a retaining wall is a structure is irrelevant to this issue. The hydrostatic pressure coverage applies only if it involves the "collapse of a building or any part of a building." Plaintiff argues the swimming pool was attached to the house, and it was supported by the retaining wall. By providing stability to the foundation support soils, the retaining wall, concrete deck and retained soils "became a vital and necessary part of the structural system supporting the residence structure," as Mason put it (Court File No. 102-2, p. 6). The retaining wall was chosen at the time of construction to support the residence (*id.*). If it was "part of [the] building," then the retaining wall's collapse would be covered as a result of hydrostatic pressure. Because there is no precise definition of "part of a building," and because Plaintiff's evidence could lead a jury to conclude the retaining wall was part of the house's foundation, the Court cannot conclude as a matter of law that there are no damages on this issue.

If the retaining wall collapse was actually caused by a landslide, as Defendant contends and as Plaintiff contends in the alternative, the insurance policy includes payment for "direct physical loss caused by landslide" to the "dwelling structure itself," but only the part of a loss exceeding 5% of the dwelling's value in "Coverage A" (Court File No. 62-9, p. 35). "Coverage A" includes the dwelling, "including structures attached to the dwelling," but not land, "including land on which the dwelling is located." (Court File No. 62-9, p. 6). Defendant contends the pool and retaining wall

17

are "set apart from the dwelling by clear space," which would make them "other structures" under "Coverage B." However, a jury could conclude the retaining wall, swimming pool, and patio are part of the dwelling or are structures attached to the dwelling.

### F. Neglect and Loss in Progress Doctrine

Defendant contends Plaintiff may not recover under the insurance policy because the insured were negligent in preserving or protecting their property, which violates the insurance contract. Defendant also contends Plaintiff's claim is barred by the loss-in-progress doctrine because the loss was already occurring when the insurance policy took effect.

The policy prohibits payment for loss caused by neglect (Court File No. 62-9, p. 14). The policy defines neglect as the "neglect of an 'insured' to use all reasonable means to save and preserve property at and after the time of a loss, or when property is in danger by a Peril Insured Against." (*Id.*). As discussed earlier, there is evidence Plaintiff did not know the wall's collapse was imminent and that any danger from erosion would be unrelated to a sudden loss due to hydrostatic pressure. Accordingly, summary judgment is inappropriate on this claim.

The same is true for the loss in progress doctrine, which precludes coverage "where the insured is aware of a threat of loss *so immediate* that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for." *Am. & Foreign Ins. Co. v. Sequatchie Concrete Servs.*, 441 F.3d 341, 345 (6th Cir. 2006) (emphasis added). Even if the insured were aware of some problems with the wall, the Court cannot conclude the insured knew of an immediate threat to the wall. The previously-discussed evidence from Minton and Mason create a jury question on this issue.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 60), **DENY** Defendant's motion to strike (Court File No. 108), **DENY** Plaintiff's motion for partial summary judgment (Court File No. 92), and **GRANT** Plaintiff's motion for judicial notice (Court File No. 114).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**
